[No. 33742. Department Two. January 3, 1957.]

OLIVE V. IREDELL, *Respondent*, v. THELMA IREDELL *et al.,*
*Appellants.*[1]

[1]Reported in 305 P. (2d) 805.

 

*Frederick Paul,* for appellants.

*Durham & Guimont,* for respondent.

HILL, J.—Jonathan Iredell had a wife, Thelma, and three children, from whom he had been separated for many years. In August, 1952, he and Olive Hilliard came to Seattle and "began a meretricious relationship of husband and wife, which was known by them to be such." A year later (August, 1953), Thelma Iredell brought an action against her husband in the King county superior court, under the uniform reciprocal enforcement of support act (Laws of 1951, chapter 196, p. 584 [*cf.* RCW 26.21]), and, since September of that year, he has paid her $125 a month for support of their children. On April 23, 1954, Jonathan and Thelma Iredell were divorced. In the divorce action, a judgment was entered in her favor for $14,910 as past due support.

April 27, 1954, Jonathan Iredell and Olive Hilliard were married. April 29, 1954, the former wife, seeking to enforce her judgment, had a writ of execution issued under which the sheriff levied on certain real and personal property.

Olive Iredell brought the present action to restrain the sale of the property, claiming as her separate property the interest in the real property represented by the down payment of eighteen hundred dollars, and all the personal property (except two items not here in question), which consisted of furniture and furnishings.

The trial court made the following unchallenged findings concerning the property levied upon under Thelma Iredell's writ of execution.

Relating to real property: A down payment of eighteen hundred dollars and all closing costs were paid by Olive Hilliard from her separate funds, although the deed ran

to "Jonathan Iredell and Olive V. Iredell, his wife." A purchase-money mortgage was given for $6,450, the balance of the purchase price. Jonathan Iredell made the monthly payments on the mortgage from his earnings, and in consequence thereof the principal had been reduced in the amount of $209.82 prior to April 27, 1954, and an additional $350.94 subsequent to that date and prior to the trial of this matter.

Relating to personal property: All the items (furniture and furnishings) were bought during the period of the meretricious relationship between Jonathan Iredell and Olive Hilliard, in the name of or charged to the account of Jonathan C. Iredell, but the entire purchase price was paid by Olive Hilliard from her separate funds.

The trial court held that the $350.94 paid on the principal of the mortgage by Jonathan Iredell out of his earnings after his marriage on April 27, 1954, was paid with community funds, and that such payments "are not subject to execution to enforce a support judgment by a former wife" of the judgment debtor. The trial court was apparently relying upon our holding in *Stafford v. Stafford* (1941), 10 Wn. (2d) 649, 651, 117 P. (2d) 753, that real property owned as community property of the husband and his second wife cannot be reached to satisfy the divorce decree awards.

The trial court also held that the furniture and furnishings paid for by Olive Hilliard, now Iredell, with her separate funds, and the eighteen hundred dollar interest in the real property paid for with her separate funds, were not subject to execution to enforce the judgment of Jonathan Iredell's former wife against him.

The judgment creditor (the former wife) and the sheriff of King county have appealed. (We will refer herein to the judgment creditor as though she were the only appellant.)

The judgment creditor, relying upon *Creasman v. Boyle* (1948), 31 Wn. (2d) 345, 196 P. (2d) 835, insists that, inasmuch as Jonathan Iredell and Olive Hilliard were living together in a meretricious relationship when the real and personal property levied upon by the sheriff was purchased,

it should be presumed as a matter of law that the parties intended to dispose of the property "exactly as they did dispose of it." On that theory, the personal property, having been purchased in the name of Jonathan Iredell, would be presumed to be his separate property, and, as the deed to the real property named him and Olive V. Iredell as the grantees, they would be tenants in common and—or so the judgment creditor argues—Jonathan Iredell would be presumed to have a one-half interest therein. No other reason is urged why Olive Iredell should not be entitled to assert and establish her right, as against Jonathan Iredell or his judgment creditor, to the furniture and the interest in the real property paid for with her separate funds.

Our holding in *Creasman v. Boyle, supra,* has been misconstrued. Property rights are not determined on the basis of social relationships, moral or immoral. *Poole v. Schrichte* (1951), 39 Wn. (2d) 558, 236 P. (2d) 1044. For reasons heretofore set forth in *Poole v. Schrichte,* pp. 562-3, and *Walberg v. Mattson* (1951), 38 Wn. (2d) 808, 232 P. (2d) 827 (See, also, *Dahlgren v. Blomeen* (1956), *ante* p. 47, 298 P. (2d) 479), our holding in the *Creasman* case has no application here. In *Walberg v. Mattson, supra,* p. 812, it is pointed out that in the *Creasman* case,

"No evidence of actual intent of the parties was introduced since the woman was dead and Rem. Rev. Stat., § 1211 [*cf.* RCW 5.60.030] . . . prohibited the man from giving such testimony."

In the *Creasman* case, *supra,* p. 356, we said,

" . . . we think that, under these circumstances and *in the absence of any evidence to the contrary,* it should be presumed *as a matter of law* that the parties intended to dispose of the property exactly as they did dispose of it." (First italics ours.)

Here there is "evidence to the contrary." For that reason, the presumption that the parties intended to dispose of the property "exactly as they did dispose of it" does not arise. *Walberg v. Mattson, supra.*

It is the judgment creditor's contention that this real property is not community property, that Jonathan Iredell

and Olive Hilliard were tenants in common, and that neither their marriage nor their use of $350.94 of community funds to reduce the mortgage makes it community property. With this we agree, but we cannot accept the judgment creditor's thesis that, as tenants in common, they had equal interest in the property and the judgment creditor is therefore entitled to reach one half of their total interest in it.

The presumption that tenants in common hold equal shares when the instrument under which they claim is silent in that regard, is subject to rebuttal. *Williams v. Monzingo* (1944), 235 Iowa 434, 16 N. W. (2d) 619, 156 A. L. R. 508, and cases there cited. (See, also, annotation, 156 A. L. R. 515.) That presumption was rebutted in the present case. When in rebuttal the purchasers of property are shown to have contributed unequally to the purchase price, the general rule is that a presumption arises that they intended to share the property in proportion to the amount contributed by each. *Williams v. Monzingo, supra,* and cases there cited.

The trial court was correct in holding that the furniture and furnishings paid for by Olive Hilliard, now Iredell, with her separate funds, and the eighteen hundred dollar interest in the real property paid for with her separate funds, are not subject to execution to enforce Thelma Iredell's judgment against Jonathan Iredell.

The parties have accepted the trial court's conclusion that the interest in the real property represented by the $209.82 paid on the principal of the mortgage by Jonathan Iredell prior to his present marriage, could be reached under Thelma Iredell's writ of execution, and she has received that amount. There remains for consideration the question of her right to reach any interest in the real property that is the result of the payment of $350.94 of community funds on the principal of the mortgage.

The payment of community funds toward the reduction of the mortgage did not change the status of the property (*In re Finn's Estate* (1919), 106 Wash. 137, 179 Pac. 103), but it did reduce the amount of the separate obligations of Jonathan and Olive Iredell and did increase

by that amount their respective interests in the property. His increased interest as a tenant in common (presumably $175.47) was subject to levy and sale under the writ of execution, and that amount should also have been awarded to his judgment creditor (his former wife), and to that extent the judgment should be modified.

The circumstances under which this matter has been presented to the trial court and to this court require some comment. There was no evidence as to the value of the real property or as to the amount the interest of Jonathan Iredell would bring if the property were sold. All parties have been content to accept the amounts actually paid on the purchase price and the principal of the mortgage as representing the amount which could be realized at a sale under the writ of execution. The community of Jonathan and Olive (Hilliard) Iredell has interposed no claim of an equitable lien in so far as community funds invested in the property are concerned. The only claim before the court adverse to that of the judgment creditor and the sheriff is that of Olive Iredell.

It seemingly has been agreed that the judgment creditor will be paid the value of Jonathan Iredell's interest in the real property as a tenant in common (see earlier comment), and that further proceedings under the writ of execution will be restrained. The extent of such interest in the real property was determined by the trial court to be $209.82. We have determined that it was $175.47 in excess of that amount. The judgment will be modified by requiring an additional $175.47 to be paid to Thelma Iredell, and, as so modified, the judgment is affirmed.

The appellant gains some benefit from the appeal; however, the respondent has prevailed on the major issue. Because of this situation, neither party will recover costs on this appeal.

DONWORTH, C. J., MALLERY, WEAVER, and OTT, JJ., concur.

---

February 11, 1957. Petition for rehearing denied.