[No. 36417. Department Two. October 10, 1963.]

HENRY E. LEINWEBER et al., Respondents, v. REUBEN LEINWEBER et al., Appellants.*

*Smith, Smith & Smith* and *Savage, Nuxoll & Brennan,* for appellants.

*F. L. Stotler, J. D. McMannis,* and *R. G. McBroom,* for respondents.

*Reported in 385 P. (2d) 556.

FINLEY, J.—The instant action for the partition of farm land in Whitman County was commenced by the plaintiffs-respondents, who owned the land in common with the marital community of Reuben and Nora Leinweber (defendants-appellants). No challenge has been made to the partition sale of the land for $275,000 to Associated Restaurants. The only question we are concerned with herein is the validity of the refusal of the trial court to grant the defendants' request in their cross complaint for $7,100 less $1,183.33 (the deduction represents the proportion chargeable to the defendants' one-sixth interest in the cotenancy) for the summer fallowing of 474 acres of the land subjected to the partition sale.

Reuben Leinweber—59 years of age at the time of trial—has lived all of his life upon the farm which was sold on the partition sale. Prior to 1938, he worked on the farm for his father; however, in 1938, Reuben's father, owner of the farm, granted him a lease to the farm and equipment. Shortly thereafter (May 1938), Mr. Leinweber died, having devised a life estate in the farm to his widow, Mary Leinweber, with the remainder to his children as tenants in common. After his father's death, Reuben continued farming the land as the tenant of his mother, who had a life estate in the land. His mother, Mary Leinweber, died on May 5, 1960, thus terminating the life estate.

Reuben had commenced plowing the land in preparation for summer fallow immediately prior to the death of his mother, and he continued this plowing after her death. In agricultural terminology, summer fallowing is the working of the land during the spring and summer of one year to destroy the weeds and conserve moisture in order to be able to raise a good crop upon the land during the following year. The preparation, as well as some follow-up maintenance of summer fallow, usually involves plowing, spring toothing, harrowing, and weeding of the land. All of these operations were performed by Reuben Leinweber.

There is nothing in the record of this case which could be construed as being critical or depreciative of the quality of the summer fallowing performed by Reuben. The testi-

mony not only indicates that summer fallowing is necessary for conservation of the land, but that the purchaser of the land placed a value on the summer fallow at $15 or $20 per acre in computing his bid. Consequently, there is no question that Reuben's activities with reference to summer fallowing did substantially increase the value of the land.

The great flexibility afforded to the courts in a partition action is indicated by a quotation from 2 Story's Equity Jurisprudence 269 (14th ed. 1918), as follows:

" . . . in all cases of partition a Court of Equity does not act merely in a ministerial character and in obedience to the call of the parties who have a right to the partition, but it founds itself upon its general jurisdiction as a Court of Equity, and administers its relief ex aequo et bono according to its own notions of general justice and equity between the parties. . . . ".

The same basic philosophy has been expressed modernly in *Dimmick v. Dimmick* (5th Dist. 1962), 20 Cal. Rptr. 82, 88, wherein *Ventre v. Tiscornia*, 23 Cal. App. 598, 605, 138 Pac. 954, 956, was quoted as follows:

" '. . . Therefore it may be safely said that the rule of today generally accepted and settled by a host of harmonious authorities, is that a cotenant, seeking partition of the common property at the hands of a court of equity, will be granted relief only upon the condition that the equitable rights of his cotenant will be respected and protected. . . . ' "

As a refinement of the above-mentioned approach, this court has held that when necessary improvements are placed upon the property by a cotenant the enhanced value may be equitably considered in an action for partition. *Bishop v. Lynch* (1941), 8 Wn. (2d) 278, 294, 111 P. (2d) 996; *Blackwell v. McLean* (1894), 9 Wash. 301, 37 Pac. 317. For cases in other jurisdictions reaching the same conclusion see: 122 A.L.R. 235 (1939), 40 Am. Jur. 32 (1942), Partition § 39; 68 C.J.S. 221 (1950), Partition § 139; and 86 C.J.S. 451 (1954), Tenancy in Common § 68(c). Thus, if Reuben's summer-fallowing activities *after the death of his mother*, are considered as "improvements," then clearly the enhanced valuation of the land which was attributable

to those activities should have been considered in the partition action.

■ The foregoing emphasis upon the death of Reuben's mother is due to the fact that prior to the death of Mary Leinweber, Reuben was a coremainderman in possession of the land by virtue of his being a lessee of the life tenant. Some jurisdictions, *e.g.*, *Annable v. Ricedorff*, (1941), 140 Neb. 93, 299 N. W. 373, have refused to permit a cotenant who made improvements while in possession during the life estate of another to receive any equitable considerations upon a subsequent partitioning of the property. However, the rule in the majority of jurisdictions (See: 98 A.L.R. 859 (1935)), and we think the better reasoned one, is to treat such a cotenant the same as any other cotenant. Two particularly apt cases are: *Chambers v. Hunton* (1931), 222 Ala. 482, 132 So. 713; and *Nelson v. Pratt* (1930), 212 Iowa 441, 230 N. W. 324 (rehearing: 212 Iowa 441, 236 N. W. 386). In each of these cases a person having a status similar to that of Reuben in the instant case was given some consideration on a partition sale for the enhanced valuation resulting from improvements. Therefore, in our equitable treatment of Reuben's summer-fallowing activities, we will not attempt to draw any distinctions between those which immediately preceded Mary Leinweber's death and those following that date.

■ The foregoing discussion of course relates to "improvements." The question remains as to whether we should elect to consider summer fallow as an "improvement" for the purposes of an equitable partition proceeding. This court, by way of dictum, in *Preugschat v. Hedges* (1952), 41 Wn. (2d) 660, 251 P. (2d) 166, referred to summer fallow as being a condition to the land rather than a thing subject to ownership. This language in a case involving a legal action construing a lease tends to negate the classification of summer fallow as an improvement in the classical sense. However, the instant action, being equitable, should not be restricted by a technical legal construction of the term, "improvement." When consideration is given to the fact that Reuben's summer fallowing was not only necessary,

but also substantially enhanced the valuation of the property, and such increased valuation was realized upon the partition sale instigated by the other cotenants, it seems appropriate to treat the summer fallow as an improvement, even though it was not permanent in nature. This differs from *Smith v. Saul* (1924), 128 Wash. 51, 221 Pac. 977, wherein recovery was sought and denied for the rendition of labor and services as contrasted with the recovery for enhanced valuation in the instant case.

Our disposition of the instant case permits Reuben to recover the benefits created by the sweat of his brow (the enhanced valuation realized upon the partition sale), and prevents a windfall to the other cotenants.

It is hereby ordered that the judgment of the trial court denying Reuben's request for the enhanced value of the property accruing from his summer fallowing is reversed, and the cause is remanded in order that the trial court may determine the amount which should be credited to Reuben. The appellants having prevailed shall recover costs.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

December 13, 1963. Petition for rehearing denied.